AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 401

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL DAVIS,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 666 and 1951<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

SEAN D. HUGHES, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security – Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
## (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

1. From at least in or about May 2022 through at least in or about June 2022, in the Southern District of New York and elsewhere, MICHAEL DAVIS, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar year 2022, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, DAVIS solicited and accepted a total of at least approximately $2,500 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $15,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

## COUNT TWO
## (Extortion Under Color of Official Right)

2. From at least in or about May 2022 through at least in or about June 2022, in the Southern District of New York and elsewhere, MICHAEL DAVIS, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, DAVIS, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due DAVIS or his office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3. I am a Special Agent with HSI currently assigned to the Document and Benefit Fraud Task Force, and I have been personally involved in the investigation of this matter. I have been employed by HSI since June 2018. I and other members of the investigative team, which includes agents from HSI, the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for NYCHA ("NYCHA-OIG"), the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4. This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5. As set forth in more detail below, there is probable cause to believe that MICHAEL DAVIS, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at a NYCHA development, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6. Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

a. NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

b. NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In at least the year 2022, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

c. NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition." As such, goods and services must

typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services. This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed. As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work. The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued. After the Procurement Department issues the purchase order, the contractor then performs the work. After the work is completed, a designated NYCHA development staff member performs a site visit. If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions. Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may ***not***: . . .

- Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.

- Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .

- Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .

- Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

employees or in connection with the actions or duties of any other employee of NYCHA.

- Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

- Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## DAVIS'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of MICHAEL DAVIS, the defendant:

a. From at least in or about May 2021 through at least in or about August 2022, DAVIS was employed as an assistant superintendent at Saint Nicholas Houses, a NYCHA development located in New York, New York.

## DAVIS'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-6")[2] who has performed work at NYCHA's Saint Nicholas Houses, among other developments,[3] I have learned the following, in substance and in part:

a. Since at least in or about 2018, CW-6 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b. CW-6 began performing no-bid purchase order work at Saint Nicholas Houses in or about 2018. In or about May 2022, CW-6 paid MICHAEL DAVIS, the defendant, approximately $1,500 to $2,000 in cash for a particular no-bid contract worth approximately $10,000 that had been awarded CW-6. NYCHA records indicate the contract is "closed," which means a NYCHA employee approved the completed work.[4]

---

[2] The cooperating witnesses referenced in this Complaint are designated as "CW-6" and "CW-21" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[3] CW-6 has provided information to law enforcement pursuant to a proffer agreement and has testified in the grand jury pursuant to an immunity order.

[4] NYCHA records list a different individual named "Michael Davis" with a middle initial (the "Other Michael Davis") as the "deliver to person" associated with this no-bid contract. However,

c. CW-6 understood, based on his interactions with DAVIS and with other NYCHA employees who similarly required payments for work, that if CW-6 did not make the payment to DAVIS, DAVIS would not approve the work CW-6 had completed, which was necessary for CW-6 to receive payment from NYCHA for the completed contract.

d. On or about July 21, 2023, CW-6 reviewed photobooks containing a photograph of DAVIS among photographs of dozens of other individuals. CW-6 identified the photograph of DAVIS as "David," the assistant superintendent at Saint Nicholas Houses to whom CW-6 had made payments in exchange for no-bid contracts from NYCHA.[5]

9. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-21"),[6] who has performed work at NYCHA's Saint Nicholas Houses, among other developments, I have learned the following, in substance and in part:

a. From at least in or about 2021 through at least in or about 2023, CW-21 performed contracting work for NYCHA as co-owner of a particular contracting company that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b. CW-21 began performing no-bid purchase order work at Saint Nicholas Houses in or about June 2021. In or about May 2022, CW-21 paid MICHAEL DAVIS, the defendant, approximately $1,000 in cash for a particular no-bid contract worth approximately

---

the Other Michael Davis did not work at Saint Nicholas Houses and never "punched in" at Saint Nicholas Houses between at least in or about January 2022 and in or about July 2022, when the Other Michael Davis resigned. Furthermore, NYCHA records show that the Other Michael Davis's name was listed as the "deliver to person" only for no-bid contracts at Saint Nicholas Houses between on or about June 24, 2021 and on or about August 17, 2022, which correspond to the time frame when DAVIS was employed at Saint Nicholas Houses (from in or about May 2021 through on or about August 28, 2022). Additionally, several of the no-bid contracts which list the Other Michael Davis's name were created *after* the Other Michael Davis's last day of work and resignation date in or about July and August 2022. Based on this information, I believe the Other Michael Davis's name was mistakenly used in the NYCHA database for contracts that were actually associated with DAVIS at Saint Nicholas Houses.

[5] There were two individuals in the photobook with the first name of "David," both of whom worked at Saint Nicholas Houses at certain times, but neither worked at Saint Nicholas Houses at the time of the particular no-bid contract for which CW-21 paid the assistant superintendent. CW-21 did not recognize one of these photographs at all. CW-21 identified the other individual (whose name CW-21 could not recall) as a superintendent at Saint Nicholas Houses whom CW-21 did not pay for any contracts.

[6] CW-21 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement pursuant to an agreement to extend the same immunity protections to the interview. CW-21 has never worked at any of the contracting companies where CW-6 worked. Both CW-6 and CW-21 were interviewed separately and instructed by law enforcement not to discuss the substance of their interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-6 and CW-21 know each other.

$6,000 that had been awarded to CW-21.[7] Specifically, while CW-21 was working at Saint Nicholas Houses to complete the work, DAVIS repeatedly appeared at the worksite and told CW-21, in substance and in part, "I need you to take care of me," which CW-21 understood to be a demand for money.[8] DAVIS further told CW-21, in substance and in part, that "I gave you this job," and that DAVIS would not award CW-21 additional no-bid contracts if CW-21 did not pay DAVIS.

c. CW-21 understood, based on his interactions with DAVIS and with other NYCHA employees who similarly required payments for work, that if CW-21 did not make payments to DAVIS, DAVIS would not award CW-21 additional contracts at Saint Nicholas Houses and would not approve contracts that CW-21 had completed.

d. On or about November 22, 2023, CW-21 reviewed photobooks containing a photograph of DAVIS among photographs of dozens of other individuals. CW-21 identified the photograph of DAVIS as the NYCHA employee at Saint Nicholas Houses to whom CW-21 had made payments in exchange for no-bid contracts from NYCHA, although CW-21 could not remember the individual's name at the time. On or about December 21, 2023, CW-21 recalled that the Saint Nicholas employee whom CW-21 had paid may have been named "Michael Davis," but CW-21 was not sure, and also recalled seeing a nameplate in the employee's office that said "Davis." CW-21 testified that the individual's last name was "Davis," but CW-21 could not recall his first name.

[7] CW-21 could not recall which NYCHA employee had awarded the contract to CW-21, and did not pay anyone for the other no-bid contracts CW-21 was awarded at Saint Nicholas Houses.

[8] NYCHA records show that DAVIS's identification badge was used to "punch in" at Saint Nicholas Houses during the approximately two-week period between when CW-21 was awarded the no-bid contract and the contract was closed.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of MICHAEL DAVIS, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

**/s/ Sean D. Hughes by SDA with permission**
SEAN D. HUGHES
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn to me through the transmission of this Complaint by reliable electronic means (telephone), this 31st day of January, 2024.

Stewart D. Aaron
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York