**LAUREN DI CHIARA**
Attorney-at-Law

52 Duane St., 7th Floor
New York, NY 10007

Tel: (516) 695 – 6801                                        Email: laurendichiara.law@gmail.com
                                                             Admitted in SDNY, EDNY, USSC, NY & CT

**Via ECF**

Hon. Sarah Netburn
United States Magistrate Judge
40 Foley Square
New York, New York 10007

September 25, 2024

        **Re:** *United States v. Michael Davis,*
            24 Cr. 210 (SN)

Dear Judge Netburn:

      I represent Michael Davis in the above-referenced matter and make this submission on behalf of Mr. Davis in advance of his sentencing scheduled for October 7, 2024. Mr. Davis pled guilty pursuant to a plea agreement with the government to the sole count of the Misdemeanor Information charging Mr. Davis with U.S. Department of Housing and Urban Development Fraud in violation of Title 18 U.S.C § 1012.

      In support of this sentencing submission, I have attached letters from family in support of Michael, a Mitigation Report, a video message from his children,[1] a medical letter, as well as a letter to Your Honor from Michael. The stipulated Guideline range by the parties pursuant to the plea agreement results in a recommended sentencing range of 8 - 12 months incarceration followed by a period of supervision. Probation has recommended a below Guidelines sentence of two years' probation. However, while I appreciate Probation's downward variance, for the reasons addressed in greater detail below, I believe Probation's recommendation does not adequately consider several factors pursuant to 18 U.S.C. § 3553(a).

      In deciding what sentence is appropriate for Michael, I respectfully suggest that there are several issues for the Court to consider. Michael has no prior criminal history. This is consistent

---

[1] This will be provided under separate cover.

with his lengthy commitment to obtaining and maintaining gainful employment. At the time of this offense, there were numerous extraordinary circumstances which led Michael to become vulnerable to making uncharacteristic decisions to engage in unlawful activity. Michael is a dedicated family man and father, who maintains an active role in his children's lives. Michael suffers from significant and ongoing medical issues. Taking into account Michael's life history and surrounding circumstances at the time of this offense, the significant financial and medical hardships he suffered and suffers, which have become exacerbated by this case, the continued support of his family which he appreciates, the need to avoid unwarranted sentencing disparities, his commitment to living a productive law-abiding life going forward and his full acceptance of responsibility and unqualified remorse, a below Guidelines sentence would be appropriate at this point in time for this defendant.

Michael has acknowledged his wrongdoing and accepted responsibility for his actions when he pleaded guilty at a very early stage of the proceedings. Notwithstanding the difficult financial circumstances at the time Michael committed this offense, he acknowledges that he must take complete responsibility for the poor choices that he made during that time. This is evident in the way Michael continues to take accountability and express his unqualified remorse in his letter to Your Honor. Exhibit A.

In accordance with his plea of guilty, Michael resigned his position with the New York City Housing Authority ("NYCHA") and has remained unemployed since the date of his plea in April 2024. During the pendency of this case, Michael has suffered tremendously. As a result of his resignation from his employment, Michael's insurance lapsed which has significantly aggravated his health issues. Michael and his family have struggled financially to the point where he, his wife and children face the potential of eviction from their home. Despite these significant setbacks in his and his family's circumstances, Michael has remained committed to providing a loving environment for his children and has made all efforts to stabilize both his health and living situation. However, both remain tenuous, and any period of incarceration could have profound consequences on either or both which could be dire and would be far greater than what is necessary.

I sincerely believe that a below Guidelines sentence of time served with supervision, or in the alternative no more than one year of probation, is a sentence that is reasonable, and one that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2" of 18 U.S.C. § 3553(a).

## I.     Michael's History and Characteristics

Michael is a loving husband, father and grandfather. Michael's childhood began in Harlem where he was raised by his two parents in a strictly Jehovah's Witness household. Exhibit B at 2. As described in both the PSR and in the Mitigation Report Michael was raised in a stable, but somewhat sheltered home, where he was free from exposure to criminal activity, drug use, and never experienced abuse. The restrictive tenets of his parents' household's religion had Michael seek independence at eighteen (18) to an apartment in Brooklyn. His upbringing, while financially stable was modest, his father working in maintenance as the sole provider of the family financially. PSR ¶ 44. Michael's mother maintained the household and raised Michael

and his siblings in the strict faith she firmly adhered to as a Jehovah's Witness and Michael's childhood consisted of "home, school, and Bible study meetings." Exhibit B at 2.

Although Michael has four biological siblings, physical distance led to limited communications and estrangement with those siblings. Exhibit B at 3. However, Michael is not without a family. Michael has several children, and a household filled with love. Michael lives with his wife, Aldrenia Gibbs-Davis and their four children. As an adult, Michael devotes his life to his children and his wife. As Aldrenia states in her letter "Michael has been an exceptional partner, father and friend, embodying the best qualities a person can have." Exhibit_C. Michael prioritized his children's wellbeing in all decision-making aspects of his life, including where his family would reside, deciding to "leave the city for somewhere safer to raise their children." Exhibit B at 4. Michael put his children first, even when it meant his commute to and from work would require several hours of travel. Exhibit B at 4-5 ("Michael had to travel 5 to 6 hours daily to maintain his job at New York City Housing Authority").

Michael's work history and ethic has been consistent throughout his life. Throughout High School, Michael worked at a supermarket. PSR ¶ 65. Shortly after graduating High School, at a less than stellar public school with a graduation rate of 37%, Michael began working in a work study program. Exhibit B at 2. Thereafter, in 1991, Michael obtained employment at NYCHA and until he resigned as a condition of his plea in this case, he maintained that employment reliably. In addition to his full-time employment record, Michael worked as a DJ, his passion, but due to financial strain resulting from his current lack of employment, Michael had to sell his equipment to support his family.

Michael was employed at NYCHA for 31 years and was extremely proud of his longstanding commitment to his job in maintenance. It was his desire to become a maintenance worker from a young age due to the example his father gave him among other things. Exhibit B at 5-6. This is why, when he graduated from High School, Michael chose a work study program that would provide an entryway into this field. While it took him over a decade, Michael worked his way up and finally found himself working in maintenance at NYCHA. For the overwhelming majority of time that Michael was employed at NYCHA, his work record was consistent, and he took great care to follow all rules and protocols. Exhibit B at 5-6. Michael grew close to the residents he interacted with and was proud of making certain their needs were met. Exhibit B at 6. As a result of Michael's dedication and hard work, "in October of 2023, Michael was awarded a Certificate of Appreciation in Recognition of Exemplary Service to NYCHA Customers." Exhibit B at 7.

As expressed in the letters written by both his wife and stepdaughter, Michael has always played an important role in the lives of those he holds dear. The letters express a sincere gratitude for the role that Michael has played in their lives and the lives of their respective children, Michael's children and grandchildren. His positive presence in their lives cannot be overstated as evidenced by the heartfelt words contained within each of these letters. Exhibit C.

Unfortunately, Michael has struggled with significant medical conditions which came to the forefront in 2017. See Exhibit B at 6-8. Michael, after observing the second plane strike the World Trade Center on September 11, participated in the clean-up. Exhibit B at 7. With all of

Michael's very significant health issues, Michael's health insurance was paramount to his ability to maintain the necessary medical bills and medication costs. Critically, in January 2022, Michael had an issue with a lapse in his health insurance and these substantial medical costs were now uncovered. See Exhibit B at 9-10.  Later in 2022, Michael's family had to move from their home and live in a hotel because the condition of the home they had become unhealthy for them to live in. In addition to Michael's mounting medical expenses, Michael had to pay for his family to live in a hotel for several months. Exhibit B at 10. As explained in the Mitigation Report, there may be a correlation between many of Michael's medical ailments and his work cleaning up the rubble after 9/11. Despite this, Michael has been denied any benefits from the compensation fund. Exhibit B at 11.

**II.     Nature and Circumstances of the Offense**

It was at or around May through August of 2022, when Michael made the regrettable decision to accept compensation for arranging contracts for individuals seeking no-bid contracts from NYCHA. Although Michael accepted money during this period of time, it was a small blip in his lengthy employment with NYCHA, where he continued to work after this period without receiving any such inappropriate monies.

It appears through the vast information ascertained from the approximately seventy (70) individuals who were arrested in February 2024, that this practice spanned over a decade by many employees of NYCHA and contractors who sought these contracts. By comparison, Michael participated in this widespread practice for a few months during an incredibly tumultuous time in his life. While this in no way excuses Michael's conduct, for which he is extremely remorseful, the circumstances of Michael's life, his finances and his health, provide a context for which this Court can consider when determining an appropriate sentence.

**III.    Michael's Current Financial, Health and Living Situation**

In determining a suitable sentence for Michael, it is highly appropriate for the Court to consider the condition of Michael's life as a result of his arrest in this case as well as subsequent to his plea of guilty. As discussed in detail in the Mitigation Report, the letters provided by his family, and in Michael's own words, Michael has been facing the consequences of his extremely poor decision making and he and his family have suffered tremendously. Exhibits A, B and C. Michael lost all income as well as his health insurance.

Financially, at the time of his resignation, Michael was the sole provider for his family. Due to his unemployment, Michael and his wife have sold all items of any value in an effort to provide food and basic needs for their children.  As stated above, Michael sold all of his DJ equipment, but also, he sold all the tools that he had acquired over the past twenty (20) years. Michael's wife sold her wedding band. These items had not only financial value, but emotional value to them both. Even with these and the many more items that they have sold, Michael and his family have been battling eviction from their home. They have been attempting to work with their landlord, making payments as they can, but with little to no money the circumstances are precarious.

Initially, Michael made efforts to obtain new employment. He sought out local resources for job placement but was unsuccessful. He sought the assistance of his Pretrial Officer Monika Lindo, and in early August, Michael was hired by one of the jobs that she referred him to. Unfortunately, due to Michael's health deteriorating, which is discussed in more detail below, he was unable to accept that employment. Exhibit D.

Michael's health has also suffered. For months, Michael was unable to pay for medical treatment and medications. This has resulted in significant consequences to his health. Both his ███████████████████████████████████████████████ Over that time, his health began to decline more rapidly. See Exhibits A, B and C. In August 2024, Michael ████████████ ████████████████████████████████████████████████. See Exhibit C, letter by Aldrenia Gibbs-Davis. █████████████████████████████████████████████████████ ████████████████████████████████████████████████ Both he and his wife have worked hard to obtain Medicaid for Michael, which thankfully he has just been approved. Unfortunately, some of the damage to his health is lasting. Michael has also recently been approved for SSI and Disability due to the severity of his health problems. This also relieves some of the financial strain he and his family have experienced during the pendency of this case.

**IV. Any Period of Incarceration Could Compromise Michael's Ability to Obtain Stability for his Family**

Despite the extremely difficult circumstances Michael has suffered, he remains dedicated to providing a safe and stable home for his family, and to getting his life back on track. Michael has just recently obtained the health insurance that he so desperately has needed to maintain his numerous medical conditions. Additionally, while he is unemployed due to his medical conditions, he is obtaining some financial assistance due to his disability. Michael is doing all that he can to address every facet of himself so that he can provide a safe and supportive living environment for his family.

While Michael has been struggling to provide financially for his children, he is providing them with attention, love and support. As described in the letters written by both his wife and stepdaughter, Michael is fully invested in his children. Exhibit C. In addition to the regular needs that children have, Michael has a son ████████████████████. His son O.D. requires additional care and attention, which Michael is paramount in providing. See Exhibits A and C.

Since his arrest, Michael has learned much about life, and about his commitment to his family and, most importantly, his commitment to himself. Knowing that it was his lapse in an otherwise record free from blemish, that has caused his family to suffer, is truly unbearable to Michael. He is currently back on the road to providing the stability his family needs. Moving forward, Michael does not want to make any further decisions which would place him in the criminal justice system or further harm his wife and children.

**V.     The Need to Avoid Unwarranted Sentencing Disparities**

18 U.S.C. § 3553(a) directs a sentencing court to consider the need to avoid unwarranted sentencing disparities among defendants involved in similar conduct with similar criminal history. Imposition of a sentence of time served will not create any sentencing disparities, either nationally or locally. On the contrary, imposition of any incarceratory sentence for Michael's offense conduct would be overly punitive and very well might create a disparity.

Of the approximately 70 defendants who were arrested in connection with receiving bribes for no-bid contracts, through their employment at NYCHA, I am aware of only seven (7) who have resolved their case with a misdemeanor disposition. To date, I am aware of five (5) of those individuals being sentenced. Not a single one of those five (5) defendants has received a sentence requiring incarceration.

Based on the information available on ECF, and a review of the government's sentencing submissions in each of the five (5) defendants who plead guilty to misdemeanors and have been sentenced I have made the following table.

| Defendant | Case Number | Applicable Guidelines | Sentence Imposed |
|---|---|---|---|
| Baez, James | 24-CR-256 (RFT) | 8-12 months' incarceration | 1 yr. Probation |
| Branch, Nymiah | 24-CR-180 (JLC) | 8-12 months' incarceration | 2 yrs. Probation |
| Chambers, Vernon | 24-CR-311 (JW) | 8-12 months' incarceration | 1 yr. Probation |
| Huntley, Nena | 24-CR-283 (GS) | 8-12 months' incarceration | 1 yr. Probation |
| Muniz, Daniel | 24-CR-228 (KHP) | 8-12 months' incarceration | 6 month's Probation |

Of course, I am not aware of the myriad factors and issues present in the lives and cases of those co-defendants. However, given the factors set forth throughout the Mitigation Report and this submission, including what a period of incarceration could do to Michael's health, it is my opinion that incarceration would be not only unnecessary in this case but could also create a disparity among similar defendants.

6

## VI.     Conclusion

   Accordingly, for the reasons detailed above, I respectfully believe that a below Guidelines sentence of time served and a period of supervision or in the alternative, no more than one year of Probation, is a sentence which meets the aims of justice and imposes a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing.

                      Respectfully submitted,

                        /s/ Lauren Di Chiara

                        **Lauren Di Chiara**
                        Counsel for the Defendant

CC:  All Parties via ECF