

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 30, 2024

**VIA ECF**
The Honorable Sarah Netburn
Chief United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Michael Davis*, 24 Cr. 210 (SN)

Dear Judge Netburn:

      The Government respectfully submits this letter in advance of the sentencing for defendant Michael Davis in the above-referenced matter, which is currently scheduled for October 7, 2024. For the reasons set forth below, the Government respectfully submits that a sentence of at least two years' probation, consistent with the recommendation of the Probation Office, would be sufficient but not greater than necessary to serve the purposes of sentencing.

      **I.**    **Background**

      The New York City Housing Authority ("NYCHA") is the largest public housing authority in the country. (Presentence Report ("PSR") ¶ 8). It provides housing to low- and moderate-income New York City residents and is funded in large part from the U.S. Department of Housing & Urban Development. (*Id.*). NYCHA collectively houses 1 in 17 New Yorkers. (Dkt. 6 (background letter)). From at least May 2021 through at least August 2022, the defendant was employed as an assistant superintendent at Saint Nicholas Houses, a NYCHA housing development located in New York, New York. (PSR ¶ 12). As an assistant superintendent, the defendant was involved in awarding construction and repair jobs to contractors seeking to be hired for work at this NYCHA property. (*Id.* ¶¶ 9-10). For jobs that were under a certain threshold (often referred to as "no-bid contracts"), the defendant could hire contractors directly without a competitive bid process or other oversight. (*Id.*).

      However, rather than selecting contractors based solely on merit, the defendant selected contractors for work based on the payment of bribes. Between approximately May and August 2022, the defendant solicited and accepted a total of at least approximately $4,000 in cash bribes from at least four contractors in exchange for at least four no-bid contracts at Saint Nicholas Houses worth approximately $29,000. (*Id.* ¶ 18). One contractor paid the defendant approximately $2,000 in cash in exchange for a contract worth approximately $10,000. (*Id.* ¶ 14). Two other contractors who worked together paid the defendant approximately $1,000 in cash in exchange for a contract worth approximately $6,000. (*Id.* ¶ 17). One more contractor paid the defendant approximately $1,000 in cash in exchange for two contracts worth approximately $8,000 and $5,000. (*Id.* ¶ 18). The contractors paid these bribes at the defendant's behest and based on

the understanding that if they did not pay, they would not be awarded additional no-bid contracts by the defendant for work at Saint Nicholas Houses, or that the defendant would not approve the work that they had already completed.

The defendant was charged by complaint in connection with this conduct and was arrested on February 6, 2024. (*Id.* at 1).

The defendant's actions were part of a widespread culture of corruption at NYCHA. (Dkt. 6). The Government charged 70 current and former NYCHA employees, including the defendant, with bribery and extortion offenses in a single, coordinated takedown. (*Id.*). Although the majority of these defendants were charged separately, the charging instruments allege that these NYCHA employees received similar bribe amounts from contractors for no-bid contracts. In fact, the required bribe amount (typically between 10 or 20 percent of the contract's value) became well known among contractors because so many NYCHA employees were demanding payments for work. (*Id.*).[1]

The impact of this corruption by former and current NYCHA employees was vast: collectively, the 70 defendants are alleged to have received more than $2 million in bribe or extortion payments from NYCHA contractors in exchange for awarding at least approximately $13 million in NYCHA contracts at approximately 96 developments in all five boroughs. (*Id.*).

## II.     The Defendant's Plea and Guidelines Range

On April 8, 2024, the defendant pleaded guilty to a misdemeanor Information charging one count of intent to defraud the U.S. Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 1012. (*Id.* ¶¶ 1-2). Specifically, the defendant is being held responsible for soliciting and accepting a total of at least $4,000 in bribes in exchange for arranging for four contractors to receive approximately $29,000 in no-bid contracts from NYCHA. (*Id.* ¶ 2).

As set forth in the parties' plea agreement and affirmed in the PSR, the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) because he was a public official, and that level is increased by two points because the offense involved more than one bribe. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a) and (b). A two-point reduction is also applied because

---

[1] To date, 45 defendants have pleaded guilty or are scheduled to plead guilty to felony charges, and nine defendants have pleaded guilty to misdemeanor charges.  Five of the defendants who have pleaded guilty to misdemeanor charges have been sentenced: (i) on July 18, 2024, Magistrate Judge James L. Cott sentenced Nymiah Branch to two years' probation; (ii) on August 20, 2024, Magistrate Judge Katharine H. Parker sentenced Daniel Muniz to 6 months' probation; (iii) on September 4, 2024, Magistrate Judge Robyn F. Tarnofsky sentenced James Baez to one year's probation; (iv) on September 17, 2024, Magistrate Judge Jennifer E. Willis sentenced Vernon Chambers to one year's probation and 30 hours of community service and (v) on September 18, 2024, Magistrate Judge Gary Stein sentenced Nena Huntley to one year's probation and 75 hours of community service.

Case 1:24-cr-00210-SN    Document 29    Filed 09/30/24    Page 3 of 7

Page 3

the defendant has zero criminal history. Thus, the defendant's applicable offense level is 11. (*Id.* ¶¶ 4, 25-34).

The defendant has zero criminal history points and is therefore in Criminal History Category I. (*Id.* ¶¶ 4, 35-40).

Based on the above calculations, the defendant's stipulated Guidelines range is 8 to 12 months' imprisonment. (*Id.* ¶¶ 4, 72). At Guidelines level 11, the applicable fine range is $4,000 to $40,000. (*Id.* ¶ 81). The Probation Office recommends a sentence of two years' probation. (*Id.* at 22).

The defendant has requested a sentence of time served, or in the alternative, no more than one year of probation. (Def. Mem. at 7).

### III. Discussion

#### A. Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the U.S. Sentencing Guidelines (the "Guidelines" or the "U.S.S.G.") continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant;
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

The Guidelines provide that where, as here, the applicable Guidelines range is in Zone B of the Sentencing Table, the minimum term may be satisfied by a term of imprisonment or a sentence of probation that includes "a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment." U.S.S.G. §5C1.1.

### B.  A Meaningful Probationary Sentence Is Appropriate

A sentence of at least two years' probation would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

*First*, the seriousness of the defendant's conduct and the need to promote respect for the law support the proposed sentence. As an assistant superintendent, the defendant held a position of public trust—one in which he was responsible for serving public housing tenants. Instead, he abused his position as an assistant superintendent to serve his own interests. To be sure, the defendant's acceptance of four bribes over a span of approximately four months places him among the less culpable of the 70 defendants that the Government charged. But the defendant's conduct was still not—as he claims—simply a "mistake" or a "lapse in judgment." (Def. Mot., Ex. B). It was not something that the defendant did one time on a single day. It was the defendant who chose repeatedly to commit crimes and betray his office for personal gain.

In sentencing a different NYCHA employee, Judge Caproni observed that "$500 for a contract seems petty, but it's not, because it's not just $500. It's 500 and 500 and 500 and a thousand, and it all adds up." *United States v. Rupnarain*, No. 24 Cr. 125 (VEC), Dkt. 28 at 29 (S.D.N.Y. Aug. 5, 2024). The defendant's crimes are serious precisely because he was a public employee—he was supposed to exercise his authority and discretion in a way that did not involve enriching himself. The defendant's conduct is also serious because—as Judge Caproni noted—it is the type of conduct that can easily add up. Courts in this District have repeatedly emphasized the harm that these bribery and corruption offenses cause. Judge Caproni described public corruption as "one of the most serious of all federal offenses" because "[t]his country cannot exist if the public does not trust that public officials are operating as servants of the people and not corruptly for their own personal gain." *Rupnarain*, Dkt. 28 at 25.

Similarly, Judge Cote, in sentencing a different NYCHA employee to 15 months' imprisonment for accepting bribes in exchange for no-bid contracts, described the offense as "a real betrayal. . . . You betrayed your employer, you betrayed the city, you betrayed the residents of the houses at which you worked. This was a corruption of your job and your duties. You were given responsibility and authority, and instead, you used that to get money you had no right to.

And corruption is a corrosive, destructive issue. People need to have faith in their government. They need to have faith in their public housing that it's a community resource that can be used to support those in need." *United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023). Whether the defendant accepted $4,000 or $40,000, the general precept remains the same: "society expects public corruption to be treated seriously and for corrupt officials to be punished." *Rupnarain*, Dkt. 28 at 26.

**Second**, the proposed sentence is vital to deter others who may seek to engage in similar schemes. By charging 70 defendants with this conduct, the Government sought to send a real message that this type of behavior will not be tolerated. However, this message is likely to ring hollow if these defendants do not face meaningful consequences for repeated abuses of their positions of responsibility over the safety and well-being of some of the most vulnerable New Yorkers.

As courts in this Circuit have recognized, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." *United States v. Johnson*, No. 16 Cr. 457 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018). Many other individuals—like the defendant—hold similar positions of public trust, have the opportunity to commit similar offenses, and face similar temptations to betray their offices, and so a substantial term of imprisonment is needed to deter these individuals from making the same choices the defendant did. *Cf. United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004). The need for deterrence is also particularly acute for crimes that are difficult to detect and punish, like bribery offenses often are. *See Rupnarain*, Dkt. 28 at 29 (noting that "these sorts of schemes are very hard to catch," and "because people know they're hard to catch, it's got to be that the punishment is sufficiently severe that people will say, I'm not going anywhere close to that because I know what happens to even good people"); *accord United States v. Zukerman*, 897 F.3d 423, 430 (2d Cir. 2018) (general deterrence considerations "argue for punishing more heavily those offenses that are either lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it")..

Prior arrests of individuals engaged in similar bribery schemes involving NYCHA's no-bid contracts have not ended this type of conduct, which suggests that those who accepted bribes in exchange for no-bid contracts were not dissuaded by the possibility of detection and arrest. Indeed, the defendant himself continued to accept bribes even after the well-publicized arrests of nine contractors who were charged with bribing NYCHA superintendents in Brooklyn in September 2021.[2] The sentence that the Court imposes here must be sufficient to send the message to those who seek to illegally profit from their NYCHA positions—or other positions of trust in local, state, or federal government agencies—that such conduct will not be tolerated and that serious consequences, including incarceration, will result. *See Rupnarain*, Dkt. 28 at 29

---

[2] *See* NBC New York, "9 Contractors Charged in 'Brazen' NYCHA Kickback Scheme: Brooklyn DA" (Sept. 20, 2021), https://www.nbcnewyork.com/news/local/crime-and-courts/contractors-expected-to-be-charged-in-alleged-nycha-kickback-scheme-sources/3280939; *Figueroa*, No. 22 Cr. 605 (DLC) (Dkt. 1).

(describing general deterrence as "very important" and that "the only tool that judges have to say this [conduct] has to stop is in sentencing").

**Third**, the defendant raises several arguments regarding his history and characteristics—including his lack of prior criminal convictions and his history as an otherwise law-abiding member of society, his long employment history, the fact that he was only an assistant superintendent for a limited amount of time, and his medical history. These circumstances should not weigh heavily in the Court's determination of an appropriate sentence. To start, the defendant's lack of criminal history is already reflected in his Guidelines range. Not only was the defendant placed in Criminal History Category I based on his zero-point offender status, but he also received a two-point reduction in his offense level.

The defendant's history of meritorious service also does not distinguish him from any other of the defendants charged with taking bribes while at NYCHA or individuals who commit bribery generally. It is precisely by virtue of a history of meritorious service that bribery defendants are generally able to obtain the position of public trust that they then exploit for their own gain. *See United States v. Fishman*, 631 F. Supp. 2d 399, 403 (S.D.N.Y. 2009). In other words, an otherwise unblemished work history is often part and parcel of bribery and does not take the defendant out of the heartland of bribery offenses or defendants. In fact, it is precisely what is so concerning about the defendant's conduct: by virtue of his prior employment and service, he was entrusted with a position of privilege and responsibility and chose to betray his office repeatedly. The Court should not grant the substantial leniency the defendant seeks based on the same history of service that laid the foundation for the defendant's crimes.

The defendant's other arguments are unpersuasive. The defendant suggests that he is less culpable because he was one of the few employees who was not a superintendent or assistant superintendent when he was arrested. (*See* Def. Mot., Ex. B at 12). But the defendant's NYCHA employment records indicate that he was assigned to Saint Nicholas Houses as an assistant superintendent from May 10, 2021 to August 29, 2022—*i.e.*, the period during which he accepted bribes—after which he was transferred to Mitchel Houses as a maintenance worker. In other words, the defendant's current title has little bearing on the seriousness of his prior betrayal of his office. The defendant also suggests that his medical issues may have affected his judgment, and that he felt "overwhelming pressure" to engage in this conduct given the culture of corruption at NYCHA (Def. Mot., Ex. B). The mitigation report attached to the defendant's sentencing submission also states in conclusory fashion that the defendant's judgment was impaired by his medical problems and that the defendant felt coerced to participate in this conduct. There is no evidence in the record that would support these conclusory statements. Nor is there any indication that the defendant was unable to make choices for himself or understand right from wrong, or that the defendant was somehow peer-pressured into accepting bribes.

## IV.   Conclusion

For the reasons set forth above, the Court should impose a sentence of at least two years' probation, as well as the agreed-upon restitution.[3]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: ____/s/____
Jerry Fang / Jacob R. Fiddelman / Meredith Foster / Catherine Ghosh / Sheb Swett
Assistant United States Attorneys
(212) 637-2584/-1024/-2310/-1114/-6522

---

[3] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release or probation that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).